# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TAWANA SIMMONS, *ex rel.*, L.H., a minor,<br><br>      Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>      Defendant. | No. 17 C 00065<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tawana Simmons filed this action on behalf of her son, L.H., seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision with an award of benefits or in the alternative, reversal and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On July 18, 2013, Tawana Simmons filed an application for SSI on behalf of her minor child, L.H., who was born on November 3, 2005, alleging that he became

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

disabled on January 1, 2012. (R. at 21, 146). The application was denied initially and upon reconsideration, after which Ms. Simmons filed a timely request for a hearing. (*Id*. at 21, 73–81, 83–92, 104–106). On March 26, 2015, L.H. and Ms. Simmons, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id*. at 21, 42–72).

On July 17, 2015, the ALJ denied L.H.'s request for benefits. (R. at 18–37). Applying the three-step sequential evaluation process, the ALJ found at step one that L.H. had not engaged in substantial gainful activity since July 18, 2013, his application date. (*Id*. at 24). At step two, the ALJ found that L.H. had the following severe impairments: cognitive deficits, articulation deficits, and asthma. (*Id*.) The ALJ also found that L.H.'s eczema was a non-severe impairment. (*Id*.) At step three, the ALJ determined that L.H. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings. (*Id*. at 24–26). Specifically, the ALJ concluded that L.H. does not meet or medically equal Listing 103.03, 102.10, 112.02, or 112.05. (*Id*. at 24–26). The ALJ then determined that L.H. does not have an impairment or combination of impairments that functionally equal the severity of any of the Listings. (*Id*. at 26–27). In making this determination, the ALJ found that L.H. had a marked limitation in acquiring and using information but less than marked in the five other areas, discussed further below. (*Id*. at 32).

The Appeals Council denied L.H.'s request for review on November 10, 2016. (R. at 1–6). L.H. now seeks judicial review of the ALJ's decision, which stands as the

final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate

3

determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

"A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To decide whether a child meets this definition, the Social Security Administration (SSA) employs a three-step analysis. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." *Id.* § 416.926a(b)(1). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment

4

interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

## III. DISCUSSION

L.H. raises three arguments in support of his request for reversal of the ALJ's determination that he is not disabled: (1) the ALJ's conclusion that his impairments did not meet Listing 112.05(B) was not supported by substantial evidence; (2) the ALJ's analysis of whether his impairments functionally equaled the severity of a listing was flawed; and (3) the ALJ failed to properly assess the credibility of L.H. and Ms. Simmons. (Dkt. 15). After reviewing the record and the parties' briefs, the Court is persuaded by the second argument. The ALJ's reasons for finding that L.H. had less than marked limitations in attending and completing tasks were not supported by substantial evidence and did not build a logical bridge between the evidence and her conclusion. *See Hopgood ex rel. L.G.* 578 F.3d at 697 (remanding where the ALJ "made conclusory statements that contradicted the evidence presented and failed to address portions of medical and school records that were favorable to [the child]."); *see also* 20 C.F.R. § § 416.926a(e)(3) (a "marked" limitation in two categories would amount to a finding of functional equivalence).[2]

---

[2] Because the Court is remanding on this issue, it need not address Plaintiff's other arguments.

**A. The ALJ's Domain Finding in Attending and Completing Tasks**

The attending and completing tasks domain considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). Attention involves regulating levels of alertness and initiating and maintaining concentration; the ability to filter out distractions and focus on an activity or task at a consistent level of performance; focusing long enough to initiate and complete an activity or task, and changing focus once it is completed; and if you lose or change focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it. *Id.* § 416.926a(h)(1)(i). The Regulations provide examples of limited functioning in attending and completing tasks, including being easily startled, distracted, or overreactive; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

In this case, the ALJ did not sufficiently explain why she found that L.H. was not markedly limited in attending and completing tasks in light of the evidence. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion."); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("[I]t is unclear what evidence the ALJ relied upon in finding that [the child] was not

markedly limited in this domain [of attending and completing tasks]. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.").

In discussing this domain, the ALJ relied on a September 19, 2013 Teacher Questionnaire completed by his teacher and school psychologist (hereafter, "2013 Teacher Questionnaire"), a March 28, 2015 Teacher Questionnaire completed by his Special Education Teacher (hereafter, "2015 Teacher Questionnaire"), L.H.'s first and third grade Individualized Education Program ("IEP") reports, and the ALJ's observation that L.H. could focus on television programs and an electronic tablet. (R. at 30–31).

### *1. The Teacher Questionnaires*

The ALJ acknowledged some of L.H.'s limitations reported in the 2013 and 2015 Teacher Questionnaires. But the ALJ did not discuss: (1) how evidence favorable to L.H. in those questionnaires was overcome by other evidence; (2) reports of L.H.'s limitations and regression on a longitudinal basis; or (3) the potential overlap between L.H.'s limitations in attending and completing tasks and in other domains.

Citing the 2015 Teacher Questionnaire, the ALJ acknowledged that L.H. had some obvious problems in attending and completing tasks and a serious problem in organizing his own things and school materials. (R. at 31, 286). The ALJ also noted the teacher's report that L.H. "needs frequent redirection to stay on task, and had a hard time maintaining focus on a task, and instead enjoyed talking to his classmates." (*Id*.). The record further reflects L.H.'s problems with (1) organization,

7

(2) focusing long enough to finish an assigned activity or task, (3) carrying out multi-step instructions, (4) working without distracting self or others, and (5) working at a reasonable pace/finishing on time. (*See id.* at 286). Despite all of these findings, the ALJ did not sufficiently explain how she reached the conclusion that L.H. was not markedly limited in this domain. *See Hopgood ex rel. L.G.*, 578 F.3d at 700 (finding ALJ's analysis deficient where he "failed to explain why he did not credit portions of the record that were favorable to L.G., including the teachers' reports that found L.G. had serious or obvious problems in this domain.").

The ALJ also failed to address L.H.'s limitations in attending and completing tasks on a longitudinal basis. *See Taylor ex rel. T.L. v. Colvin*, No. 15 CV 3176, 2016 U.S. Dist. LEXIS 157477, at *35 (N.D. Ill. Nov. 14, 2016) ("An ALJ is obligated to consider a child's limitations on a longitudinal basis and not to decide the issue based on an isolated time frame within the disability period.") (citing SSR 09-2p, 2009 SSR LEXIS 2). A comparison of the 2013 and 2015 Teacher Questionnaires reflects more severe limitations in attending and completing tasks in 2015 as compared to 2013. *Compare* R. at 223 (no obvious or serious problems in 2013) to *id.* at 286 (one serious problem and four obvious problems in 2015). L.H.'s IEP in 2015 also specifically stated that L.H. suffered from "severe regression on his IEP goals and objectives and requires an unreasonably long period of time to relearn previously learned skills." (*Id.* at 265).

The ALJ also gave no consideration to the potential overlap between L.H.'s limitations in attending and completing tasks and in acquiring and using

8

information, particularly since the ALJ found L.H. to be markedly limited in acquiring and using information. Under the Social Security Rulings, a restriction in one area of the six functional domains can affect the child's functioning in other areas. *See, e.g.*, SSR 09-3p (stating that a child with restrictions in the ability to acquire and use information "may also have limitations in other domains"). "[M]ental impairments that affect a child's ability to learn may also affect a child's ability to attend to or complete tasks." *Id*. Addressing the attending and completing tasks domain, Social Security Ruling 09-4p states: "Rating the limitations caused by a child's impairment(s) in each and every domain that it affects is not 'double-weighting' of either the impairment(s) or its effects. Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities."

The ALJ overlooked several statements in the teacher questionnaires: the ALJ acknowledged the report in 2013 that L.H. had numerous very serious problems in this area and that L.H. "needs one-to-one assistance." (R. at 29). The entirety of this teacher statement, which was not quoted in full by the ALJ, stated: "[L.H.] needs 1-to-1 assistance *to complete any grade-level task. He would not be successful working independently*." (*Id*. at 226) (emphasis added). The ALJ did not discuss this observation with respect to L.H.'s limitations in attending and completing tasks. Instead, the ALJ focused on another note that L.H.'s struggles were "due in no part to his lack of focus or effort." (R. at 31, 223).

9

The 2015 Teacher Questionnaire noted that L.H. needs cues and repetition if given oral directions. (*Id.* at 285). Under the interacting and relating with others domain, the teacher reported that when L.H. "does not follow directions….he will become very defensive and cannot accept consequences for his actions…During class, [L.H.] is very impulsive and will consistently call our answers instead of raising his hands." (*Id.* at 287). These are of the type of observations noted to be indicators of limited functioning in attending and completing tasks. *See* SSR 09-4p ("Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain [of attending and completing tasks].") and 20 C.F.R. § 416.926a(h)(3) (examples include "you frequently interrupt others" and "are easily frustrated."). In light of the guidance in the Social Security Rulings, the ALJ should have discussed how L.H.'s limitations in other areas, particularly acquiring and using information, impacted his functioning in attending and completing tasks.

### *2. IEPs*

The "whole child" standard requires the ALJ to examine an individual's functioning relative to his or her non-disabled peers. "The functional equivalence rules require us to begin by considering how the child functions every day and in all settings *compared to other children the same age who do not have impairments.*" SSR 09-1p (emphasis added). Here, the ALJ concluded that L.H. made "significant gains" since his 2013 IEP based on the fact that L.H. "recently completed the third grade in a self-contained special education classroom." (R. at 29).

It is well-settled that completion of a grade in a special education classroom is not determinative of a child's functioning. *See Saracco ex rel. T.H. v. Berryhill*, 2017 U.S. Dist. LEXIS 200542, *24-25 ("The regulations emphasize that a child who receives special education accommodations cannot automatically be compared to non-impaired children because 'good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments.'") (citing 20 C.F.R. § 416.924a(b)(7)(iv)). Progress under an IEP does not equate to success as compared to non-disabled children. *See A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *11 (N.D. Ill. May 18, 2011). Moreover, contrary to the ALJ's conclusion that L.H. made "significant gains", the 2015 IEP specifically refers to L.H.'s "severe regression" and his need to participate in extended year services, as well as his continued need for accommodations and modifications. (R. at 265–70).

Also troubling is the ALJ's conclusion that "[a]lthough he receives special education services, this is consistently reported to be in response to cognitive deficits rather than concentration deficits." (R. at 31). It is not clear to the Court how the ALJ reached this conclusion. As discussed, "mental impairments that affect a child's ability to learn may also affect a child's ability to attend to or complete tasks." SSR 09-3p. Thus even if the ALJ is correct that L.H. required special education services in response to "cognitive defects", she failed to consider that cognitive impairments may affect L.H.'s ability to concentrate.[3]

---

[3] It is also not clear to the Court how the ALJ gave "great weight" to L.H.'s updated school records and found "slightly greater limitations" than the state agency consultants (R. at 28),

11

### *3. L.H.'s focus on television and a tablet*

The ALJ also pointed to L.H.'s ability to get to school, focus on television, and focus on an electronic tablet as evidence of his ability to concentrate. (R. at 31). At the hearing the ALJ stated, "…he can sit there and do that [use a tablet] for hours. I mean, it looks like he can concentrate – that's not his problem?" (*Id*. at 58). The ALJ again cited L.H.'s "good focus on the tablet" in her opinion when discussing the domain of attending and completing tasks. (*Id*. at 31). But the ALJ failed to explain how L.H.'s focus on a tablet or television is determinative of his functioning in school or daily life. "Children may function differently in unfamiliar or one-on-one settings than they do in their usual settings at home, at school, in childcare or in the community…[and] may appear more or less impaired on a single examination (such as a consultative examination) than indicated by the information covering a longer period." 20 C.F.R. § 416.924a(b)(6). As explained in Social Security Ruling 09-4p:

> Some children with impairments can attend to some tasks, but not to all tasks in all settings. Such children may exhibit "hyperfocus," an intense focus on things that interest them, such as video games, but be limited in their ability to focus on other tasks.

SSR 09-4p, 2009 WL 396033 *3; *See also M.W. ex rel. Terry v. Astrue*, No. 10 C 7813, 2012 WL 1532386 *13 (N.D. Ill. Apr. 30, 2012) (finding "it may be true that MW could focus enough to play video games, but that fact alone is not enough to trump

---

on one hand, but on the other, found that L.H. was not markedly limited in attending and completing tasks—the same finding as the state agency consultants. Moreover, the state agency consultant assessments were completed in 2013 and 2014 without the benefit of the 2015 Teacher Questionnaire or 2015 IEP.

12

the evidence that MW had problems" in the area of attending and completing tasks.).

**C. Other Issues**

Because the Court is remanding on the ALJ's assessment of the domain of attending and completing tasks, the Court chooses not to address L.H.'s other arguments. Nevertheless, on remand, the ALJ must reevaluate all six domains in their entirety. The ALJ shall then reevaluate L.H.'s impairments, considering all of the evidence of record, including L.H.'s and Ms. Simmons' testimony, and shall explain the basis of her findings in accordance with the applicable regulations and rulings.

**D. Summary**

In sum, substantial evidence does not support the ALJ's finding that L.H. had less than marked restrictions in the domain of attending and completing tasks. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The Court does not believe this case meets the standard for an award of benefits and declines that request by Plaintiff. *Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted) (Reversal with an instruction to award benefits only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion."). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence.

13

Therefore, Plaintiff's motion is granted insofar as it requests remand for further proceedings. On remand, the ALJ shall reevaluate L.H.'s limitations in accordance with this opinion, considering all of the evidence in the record, and shall explain the basis for her findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [15] is **GRANTED**. Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: March 2, 2018

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge